# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL ENSLEY, et al., | |
| Plaintiffs, | |
| v. | |
| BEN O. TURNAGE, et al., | Case No: 5:15-cv-01179-HGD |
| Defendants. | |

<i>AND</i>

| | |
|---|---|
| GEMSTONE FOODS, LLC, and RCF, LLC, | |
| Plaintiffs, | |
| vs. | Case No. 5:15-cv-02207-MHH |
| AAA FOOD ENTERPRISES, INC.; A&M CONSULTING FIRM, LLC; PORTIONING PARTNERS; FARM FRESH FOODS, LLC; COOPER, HILL & LECROIX, CPAs; MICHAEL CLAUDE ENSLEY; ANNETTE CARR; SHANE PASS; MARK WELBORNE; MATTHEW WESTER; EDWARD L. HILL; GARY HILL; DEBORAH CAMPOS; and John and Jane Does 1–10, | |
| Defendants. | |

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT AND AAA FOOD ENTERPRISES, INC.'S COUNTERCLAIM

Defendants AAA Food Enterprises, Inc., A&M Consulting Firm, LLC, Portioning Partners; Farm Fresh Foods, LLC, Cooper, Hill & Lecroix, CPAs, Michael Claude Ensley, Annette Carr, Shane Pass, Mark Welborn, Matthew Wester, Edward L. Hill, Gary Hill, Deborah Campos, (collectively, "Defendants") answer the Complaint filed by Gemstone Foods, LLC and RCF, LLC (collectively, "Gemstone") and AAA Foods Enterprises, Inc., and Annette Carr (collectively, "AAA") assert the following counterclaim against Gemstone. Defendants assert that Plaintiffs' claims in the Complaint are due to be dismissed. Defendants reserve all rights to seek sanctions.

## ANSWER

1.1     Defendants deny the allegations in paragraph 1.1.

1.2     Defendants deny the allegations in paragraph 1.2.

1.3     Defendants deny the allegations in paragraph 1.3.

## 2.  PARTIES

2.1     Defendants admit the allegations in paragraph 2.1.

2.2     Defendants admit the allegations in paragraph 2.2.

2.3     Defendants admit the allegations in paragraph 2.3.

2.4     Defendants admit the allegations paragraph 2.4.

2.5     Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 2.5, and therefore deny.

2.6     Defendants admit the allegations in paragraph 2.6.

2.7     Defendants admit the allegations in paragraph 2.7.

2.8     Defendants admit the allegations in paragraph 2.8.

2.9     Defendants deny the allegations in paragraph 2.9.

2.10    Defendants admit the allegations in paragraph 2.10.

2.11    Defendants admit the allegations in paragraph 2.11.

2.12    Defendants admit the allegations in paragraph 2.12.

2.13    Defendants admit the allegations in paragraph 2.13.

2.14    Defendants admit the allegations in paragraph 2.14.

2.15    Defendants admit the allegations in paragraph 2.15.

2.16    Defendants deny the allegations in paragraph 2.16. Defendants further
note that it is impermissible to name fictitious defendants in federal court and that
this allegation is due to be struck.

### 3.   JURISDICTION AND VENUE

3.1     Paragraph 3.1 is a legal conclusion that Defendants neither admit nor
deny.

3.2     Paragraph 3.2 is a legal conclusion that Defendants neither admit nor
deny.

3.3     Paragraph 3.3 is a legal conclusion that Defendants neither admit nor
deny.

# 4.  FACTS

4.1     Defendants deny the allegations in paragraph 4.1 as stated.

4.2     Defendants are without sufficient information to admit or deny the allegations in paragraph 4.2 and therefore deny.

4.3     Defendants admit that Mike Ensley ("Ensley") had contacts in the poultry business and brought qualified individuals to help manage Gemstone, but deny the remaining allegations in paragraph 4.3.

4.4     Defendants admit that Ensley and Turnage developed a business relationship and that Ensley looked out for Gemstone's best interest. Defendants deny the remaining allegations in paragraph 4.4.

4.5     Defendants admit that Ensley introduced AAA to Ben Turnage and that Carr is the owner of AAA. Defendants further admit that AAA had a relationship with Ensley and that Ensley used AAA to source product to Gemstone and that AAA brought sales to Gemstone through AAA's network. Defendants deny the remainder of allegations in Paragraph 4.5.

4.6     Defendants admit the allegations in paragraph 4.6.

4.7     Defendants deny the allegations in paragraph 4.7.

4.8     Defendants admit the allegations in paragraph 4.8.

4.9     Defendants admit the allegations in paragraph 4.9.

4.10    Defendants admit that Ensley introduced Turnage to management level operators and deny the remaining allegations in paragraph 4.10.

4.11    Defendants deny the allegations in paragraph 4.11.

4.12    Defendants deny the allegations in paragraph 4.12.

4.13    Defendants admit that RCF and Gemstone are related entities and deny the remaining allegations in paragraph 4.13.

### General Business Operations

4.14    Defendants are without sufficient information to admit or deny the allegations in paragraph 4.14 and therefore deny.

4.15    Defendants deny the allegations in paragraph 4.15 as stated.

4.16    Defendants deny the allegations in paragraph 4.16 as stated.

4.17    Defendants admit the allegations related to the job title of Pass, Welborn, Campos, and Wester and deny the remaining allegations in paragraph 4.17.

4.18    Defendants admit that Ensley had the means to secure a line of credit for $4,000,000. Defendants deny the remaining allegations in paragraph 4.18.

4.19    Defendants state the any line of credit terms and validity agreement referred to in this paragraph speaks for themselves and deny the remaining allegations in paragraph 4.19.

4.20    Defendants admit that the validity guarantee was signed but are without sufficient information to admit or deny the remaining allegations in paragraph 4.20 and therefore deny them.

4.21    Defendants deny the allegations in paragraph 4.21.

4.22    Defendants deny the allegations in paragraph 4.22.

4.23    Defendants deny the allegations in paragraph 4.23.

4.24    Defendants deny the allegations in paragraph 4.24.

4.25    Defendants deny the allegations in paragraph 4.25.

4.26    Defendants deny the allegations in paragraph 4.26.

## Ensley's Unreasonable Demand for 50% Ownership of RCF and Gemstone

4.27    Defendants deny the allegations in paragraph 4.27.

4.28    Defendants deny the allegations in paragraph 4.28 as stated. However, Defendants admit that Plaintiffs agreed to pay Ensley substantial compensation.

4.29    Defendants deny the allegations in paragraph 4.29 as stated.

4.30    Defendants deny the allegations in paragraph 4.30 as stated.

4.31    Defendants admit that Ensley authorized weekend pay when operating 7 days per week in order to meet customer demands, but deny the remaining allegations in paragraph 4.30.

## The Urner Barry System of Market Pricing for Poultry Commodities

4.32   Defendants admit that AAA was able to secure some wholesale poultry for purchase for Gemstone in tough market conditions. Defendants deny the remaining allegations in paragraph 4.32.

4.33   Defendants deny the allegations in paragraph 4.33.

4.34   Defendants deny the allegations in paragraph 4.34.

4.35   Defendants deny the allegations in paragraph 4.35.

### Fraudulent Breach by Ensley, Carr, and AAA

4.36   Defendants deny the allegations in paragraph 4.36.

4.37   Defendants deny the allegations in paragraph 4.37.

4.38   Defendants deny the allegations in paragraph 4.38.

4.39   Defendants deny the allegations in paragraph 4.39.

4.40   Defendants admit that Ensley and Carr had a relationship, and deny the allegations in paragraph 4.40.

4.41   Defendants deny the allegations in paragraph 4.41.

4.42   Defendants deny the allegations in paragraph 4.42.

4.43   Defendants admit that AAA submitted some invoices in November 2014 for money owed by Plaintiffs, but deny the allegations in paragraph 4.43.

4.44   Defendants deny the allegations in paragraph 4.44.

4.45   Defendants deny the allegations in paragraph 4.45.

### Fraudulent Breach by Eddie Hill and LeCroix

4.46    Defendants admit that Plaintiffs hired Eddie Hill but deny the allegations in paragraph 4.46 as stated.

4.47    Defendants deny the allegations in paragraph 4.47 as stated.

4.48    Defendants deny the allegations in paragraph 4.48.

4.49    Defendants admit that Eddie Hill worked with Ensley, Gary Hill, Pass, and Welborn for a period of time, but deny the remaining allegations in paragraph 4.49.

### Discovery of Additional Details of Sabotage in 2015

4.50    Defendants deny the allegations in paragraph 4.50.

4.51    Defendants deny the allegations in paragraph 4.51.

4.52    Defendants deny the allegations in paragraph 4.52.

4.53    Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 4.53, and therefore deny.

4.54    Defendants deny the allegations in paragraph 4.54.

4.55    Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 4.55, and therefore deny.

4.56    Defendants deny the allegations in paragraph 4.56.

4.57    Defendants deny the allegations in paragraph 4.57.

4.58    Defendants deny the allegations in paragraph 4.58.

4.59    Defendants deny the allegations in paragraph 4.59.

4.60   Defendants deny the allegations in paragraph 4.60.

4.61   Defendants deny the allegations in paragraph 4.61.

4.62   Defendants deny the allegations in paragraph 4.62.

## Creation of Farm Fresh Foods, LLC

4.63   Defendants admit that Eddie Hill is an owner of Farm Fresh. Defendants deny the remaining allegations in paragraph 4.63.

4.63.1 Defendants deny the allegations in paragraph 4.63.1 (Plaintiffs included two paragraph 4.63s and this 4.63.1 responds to the duplicate paragraph 4.63).

4.64   Defendants deny the allegations in paragraph 4.64.

4.65   Defendants deny the allegations in paragraph 4.65.

4.66   Defendants deny the allegations in paragraph 4.66.

4.67   Defendants deny the allegations in paragraph 4.67

4.68   Defendants deny the allegations in paragraph 4.68.

4.69   Defendants deny the allegations in paragraph 4.69.

4.70   Defendants deny the allegations in paragraph 4.70.

## Expansion of Farm Fresh Foods

4.71   Defendants deny the allegations in paragraph 4.71.

4.72   Defendants deny the allegations in paragraph 4.72.

4.73   Defendants deny the allegations in paragraph 4.73.

## 5.  CAUSES OF ACTION

### COUNT I – RICO VIOLATION UNDER 18 U.S.C. §1964 (c)

**Plaintiffs' RICO claims, including those listed in Count I are due to be dismissed for failure to state a claim.**

5.1     Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.2     This paragraph is a legal conclusion that requires no response.

5.3     This paragraph is a legal conclusion that requires no response.

5.4     Defendants deny the allegations in paragraph 5.4.

5.5     Defendants deny the allegations in paragraph 5.5.

5.6     Defendants deny the allegations in paragraph 5.6.

5.7     Defendants deny the allegations in paragraph 5.7.

5.8     Defendants deny the allegations in paragraph 5.8.

5.9     Defendants deny the allegations in paragraph 5.9.

5.10    Defendants deny the allegations in paragraph 5.10.

5.11    Defendants deny the allegations in paragraph 5.11 insofar as Plaintiffs allege violations of the Racketeering Influence and Corrupt Organizations Act. Defendants admit that they only conducted their own affairs and not the affairs of a RICO enterprise.

5.12    Defendants deny the allegations in paragraph 5.12.

5.13    Defendants deny the allegations in paragraph 5.13.

5.14    Defendants deny the allegations in paragraph 5.14.

5.15    Defendants deny the allegations in paragraph 5.15.

5.16    Defendants deny the allegations in paragraph 5.16.

5.17    Defendants deny the allegations in paragraph 5.17.

5.18    Defendants deny the allegations in paragraph 5.18.

5.19    Defendants deny the allegations in paragraph 5.19.

5.20    Defendants deny the allegations in paragraph 5.20.

5.21    Defendants deny the allegations in paragraph 5.21.

5.22    Defendants deny the allegations in paragraph 5.22.

5.23    Defendants deny the allegations in paragraph 5.23.

5.24    Defendants deny the allegations in paragraph 5.24.

5.25    Defendants deny the allegations in paragraph 5.25.

5.26    Defendants deny the allegations in paragraph 5.26.

5.27    Defendants deny the allegations in paragraph 5.27.

5.28    Defendants deny the allegations in paragraph 5.28.

5.29    Defendants deny the allegations in paragraph 5.29.

5.30    Defendants deny the allegations in paragraph 5.30.

5.31    Defendants deny the allegations in paragraph 5.31.

5.32    Defendants deny the allegations in paragraph 5.32.

5.33    Defendants deny the allegations in paragraph 5.33.

5.34    Defendants deny the allegations in paragraph 5.34.

**COUNT II – RICO CONSPIRACY UNDER 18 U.S.C. § 1964(c)**

**Plaintiffs' RICO claims, including those listed in Count II are due to be dismissed for failure to state a claim.**

5.35    Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.36    Defendants deny the allegations in paragraph 5.36.

5.37    Defendants deny the allegations in paragraph 5.37.

5.38    This paragraph is a legal conclusion for which no response is required.

5.39    Defendants deny the allegations in paragraph 5.39.

5.40    Defendants deny the allegations in paragraph 5.40.

5.41    Defendants deny the allegations in paragraph 5.41.

5.42    Defendants deny the allegations in paragraph 5.42.

5.43    Defendants deny the allegations in paragraph 5.43.

5.44    Defendants deny the allegations in paragraph 5.44.

5.45    Defendants deny the allegations in paragraph 5.45.

5.46    Defendants deny the allegations in paragraph 5.46.

5.47    Defendants deny the allegations in paragraph 5.47.

**COUNT III – FRAUDULENT MISREPRESENTATION/FRAUDULENT INDUCEMENT**

**Plaintiffs' Count III is due to be dismissed for failure to state a claim.**

5.48    Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.49    Defendants deny the allegations in paragraph 5.49.

5.50    Defendants deny the allegations in paragraph 5.50.

5.51    Defendants deny the allegations in paragraph 5.51.

5.52    Defendants deny the allegations in paragraph 5.52.

5.53    Defendants deny the allegations in paragraph 5.53.

5.54    Defendants deny the allegations in paragraph 5.54.

5.55    Defendants deny the allegations in paragraph 5.55.

## COUNT IV – BREACH OF THE DUTY OF LOYALTY; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING; BREACH OF FIDUCIARY DUTY; AND MISAPPROPRIATION OF CORPORATE OPPORTUNITIES BY ENSLEY

**Plaintiffs' Count IV is due to be dismissed for failure to state a claim.**

5.56    Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.57    Defendants deny the allegations in paragraph 5.57.

5.58    Defendants deny the allegations in paragraph 5.58.

5.59    Defendants deny the allegations in paragraph 5.59.

5.60    Defendants deny the allegations in paragraph 5.60.

5.61    Defendants deny the allegations in paragraph 5.61.

5.62    Defendants deny the allegations in paragraph 5.62.

5.63    Defendants deny the allegations in paragraph 5.63.

5.64    Defendants deny the allegations in paragraph 5.64.

5.65    Defendants deny the allegations in paragraph 5.65.

5.66    Defendants deny the allegations in paragraph 5.66.

5.67    Defendants deny the allegations in paragraph 5.67.

5.68    Defendants deny the allegations in paragraph 5.68.

5.69    Defendants deny the allegations in paragraph 5.69.

5.70    Defendants deny the allegations in paragraph 5.70.

5.71    Defendants deny the allegations in paragraph 5.71.

5.72    Defendants deny the allegations in paragraph 5.72.

5.73    Defendants deny the allegations in paragraph 5.73.

5.74    Defendants deny the allegations in paragraph 5.74.

5.75    Defendants deny the allegations in paragraph 5.75.

## COUNT V – BREACH OF THE DUTY OF LOYALTY; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING; BREACH OF FIDUCIARY DUTY, AND MISAPPRORIATION OF CORPORATE OPPORTUNITIES BY PASS, WELBORN, WESTER, EDDIE HILL, GARY, HILL, AND CAMPOS

**Plaintiffs' Count V is due to be dismissed for failure to state a claim.**

5.76   Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.77   Defendants deny the allegations in paragraph 5.77.

5.78   Defendants deny the allegations in paragraph 5.78.

5.79   Defendants deny the allegations in paragraph 5.79.

5.80   Defendants deny the allegations in paragraph 5.80.

5.81   Defendants deny the allegations in paragraph 5.81.

## COUNT VII – BREACH OF CONTRACT – CARR/AAA

5.82   Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.83   Defendants deny the allegations in paragraph 5.83.

5.84   Defendants deny the allegations in paragraph 5.84.

## COUNT VII – BREACH OF CONTRACT – ENSLEY

5.85   Defendants adopt and incorporated by reference their responses to the above paragraphs.

5.86   Defendants deny the allegations in paragraph 5.86.

5.87   Defendants deny the allegations in paragraph 5.87.

## COUNT VIII – BREACH OF CONTRACT/TORTIOUS BREACH OF CONTRACT –CARR AND AAA

**Plaintiffs' Count VIII is due to be dismissed for failure to state a claim.**

5.88   Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.89   Defendants deny the allegations in paragraph 5.89.

5.90   Defendants deny the allegations in paragraph 5.90.

## COUNT IX – CONSTRUCTIVE TRUST

**Plaintiffs' Count IX is due to be dismissed for failure to state a claim.**

5.91   Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.92   Defendants deny the allegations in paragraph 5.92.

## COUNT X – BREACH OF FIDUCIARY DUTY BY EDDIE HILL, CPA AND LECROIX

**Plaintiffs' Count X is due to be dismissed for failure to state a claim.**

5.93   Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.94   Defendants admit that Eddie Hill was engaged to provide CPA services to Gemstone until he was fired by Gemstone. Defendants deny the remaining allegations in paragraph 5.94.

5.95   Defendants deny the allegations in paragraph 5.95.

5.96   Defendants deny the allegations in paragraph 5.96.

5.97   Defendants deny the allegations in paragraph 5.97.

5.98   Defendants deny the allegations in paragraph 5.98.

5.99   Defendants deny the allegations in paragraph 5.99.

## COUNT XI – CONVERSION

**Plaintiffs' Count XI is due to be dismissed for failure to state a claim.**

5.100 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.101 Defendants admit that Pass, Welborn, Wester, Gary Hill, and Campos are former employees of Gemstone and deny the remaining allegations in paragraph 5.101.

5.102 Defendants deny the allegations in paragraph 5.102.

5.103 Defendants deny the allegations in paragraph 5.103.

5.104 Defendants deny the allegations in paragraph 5.104.

5.105 Defendants deny the allegations in paragraph 5.105.

## COUNT XII – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS BY ENSLEY, WELBORN, AND EDDIE HILL, CPA

**Plaintiffs' Count XII is due to be dismissed for failure to state a claim.**

5.106 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.107 Defendants deny the allegations in paragraph 5.107.

5.108 Defendants deny the allegations in paragraph 5.108.

5.109 Defendants deny the allegations in paragraph 5.109.

## COUNT XIII – CIVIL CONSPIRACY

**Plaintiffs' Count XIII is due to be dismissed for failure to state a claim.**

5.110 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.111 Defendants deny the allegations in paragraph 5.111.

5.112 Defendants deny the allegations in paragraph 5.112.

5.113 Defendants deny the allegations in paragraph 5.113.

5.114 Defendants deny the allegations in paragraph 5.114.

5.115 Defendants deny the allegations in paragraph 5.115.

5.116 (first one)    Defendants deny the allegations in paragraph 5.116. Plaintiffs included two paragraphs numbered 5.116 and deny both.

## COUNT XIV –ACCOUNTING

5.116 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.117 Defendants deny the allegations in paragraph 5.117.

5.118 Defendants deny the allegations in paragraph 5.118.

5.119 Defendants deny the allegations in paragraph 5.119.

5.120 Defendants admit that Gemstone purchased poultry from AAA in 2014. Defendants deny the remaining allegations in paragraph 5.120.

5.121 Defendants deny the allegations in paragraph 5.121.

## COUNT XV – UNJUST ENRICHMENT

**Plaintiffs' Count XV is due to be dismissed for failure to state a claim.**

5.122 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.123 Defendants deny the allegations in paragraph 5.123.

## COUNT XVI – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

**Plaintiffs' Count XVI is due to be dismissed for failure to state a claim.**

5.124 AAA adopts and incorporates by reference their responses to the above paragraphs.

5.125 Defendants deny that Plaintiffs are entitled to any injunctive relief.

## COUNT XVII – MONEY PAID BY MISTAKE

5.126 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.127 Defendants admit that Ensley was paid bonuses based on Gemstone's profit, but are without sufficient information to admit or deny the allegations in paragraph 5.127, and therefore deny.

5.128 Defendants deny the allegations in paragraph 5.128.

5.129 Defendants deny the allegations in paragraph 5.129.

## COUNT XVIII –NEGLIGENCE, GROSS NEGLIGENCE, WANTONESS

**Plaintiffs' Count XVIII is due to be dismissed for failure to state a claim.**

5.130 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.131 Defendants deny the allegations in paragraph 5.131.

5.132 Defendants deny the allegations in paragraph 5.132.

## COUNT XIX –UNLAWFUL SUPPRESSION OF MATERIAL FACTS

**Plaintiffs' Count XIX is due to be dismissed for failure to state a claim.**

5.133 Defendants adopt and incorporate by reference their responses to the above paragraphs.

5.134 Defendants deny the allegations in paragraph 5.134.

5.135 Defendants deny the allegations in paragraph 5.135.

5.136 Defendants deny the allegations in paragraph 5.136.

## GENERAL DENIAL AND RESPONSE TO PRAYER FOR RELIEF

Unless expressly admitted herein, Defendants deny the allegations of the Complaint and deny that Plaintiffs are entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES

Further answering the complaint, Defendants assert the following affirmative defenses. In addition, Defendants reserve the right to amend its answer

to assert any additional defenses as they become known through the course of discovery or otherwise.

## DEFENSES

### First Defense

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims are barred because Plaintiffs have failed to sufficiently plead claims such that individual Defendants have sufficient notice as to what claims, if any, are being alleged against them individually.

### Third Defense

Plaintiff's claims are barred, in whole or in part, by the failure to plead conspiracy with particularity and without an underlying wrong.

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, by the failure to plead fraud with particularity as required by Fed. R. Civ. P. Rule 9 (b) and by their failure to identify the representations that supposedly constituted the fraud as well as the persons who allegedly made the representations.

### Fifth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Sixth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Seventh Defense

Defendants plead as a defense the merger doctrine.

## Eighth Defense

Defendants plead as a defense the Statute of Frauds and the parol evidence rule.

## Ninth Defense

Defendants plead justification as a defense.

## Tenth Defense

Any damages that Plaintiffs may have suffered were the direct or proximate result of the acts or omissions of Plaintiffs or third parties.

## Eleventh Defense

Plaintiff's claims, including but not limited to the claim for breach of contract, fail for lack of consideration.

## Twelfth Defense

Defendants plead the defenses of set-off, accord and satisfaction, payment, and release.

## Thirteenth Defense

Defendants plead ratification, waiver, release, and complete performance as defenses.

## Fourteenth Defense

Defendants' conduct was not in any manner criminal, negligent or wanton.

## Fifteenth Defense

Defendants plead the business judgment rule as a defense.

## Sixteenth Defense

Defendants plead lack of privity as a defense.

## Seventeenth Defense

Defendants plead fraud and deceit by Plaintiffs as a defense.

## Eighteenth Defense

The imposition of punitive or exemplary damages against Defendants would violate their constitutional rights under the Due Process clauses in the Fifth and Fourteenth Amendments to the Constitution of the United States, the Excessive Fines clause in the Eighth Amendment to the Constitution of the United States, the Double Jeopardy clause in the Fifth Amendment to the Constitution of the United States, other applicable federal and local constitutional law, and/or applicable common law and public policies including but not limited to:

a.     imposition of such damages by a jury which (1) is not provided standards of sufficient clarity for determining the appropriateness and the appropriate size of such a damages award, (2) is not adequately and clearly instructed on the limits of such imposed by the principles of deterrence and

punishment, (3) is not expressly prohibited from awarding such damages or determining the amount thereof, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status, wealth, or state of residence of Defendants, (4) is permitted to award such damages under a standard for determining liability which is vague and arbitrary and does not define with sufficient clarity the conduct or mental state which makes such damages permissible, and (5) is not subject to meaningful trial court and appellate court judicial review for reasonableness and the furtherance of legitimate purposes on the basis of objective standards;

      b.    imposition of such punitive or exemplary damages, and determination of the amount of an award thereof, where applicable state law is impermissibly vague, imprecise, or inconsistent;

      c.    imposition of such punitive or exemplary damages, and determination of the amount of an award thereof, employing a burden of proof less than clear and convincing evidence;

      d.    imposition of such punitive or exemplary damages, and determination of the amount of an award thereof, without bifurcating the trial and trying all such damages issues only if and after the liability of Defendants has been found on the merits;

      e.    imposition of such punitive or exemplary damages, and determination of the amount of an award thereof, under applicable law subject to no predetermined limit, such as a maximum multiple of compensatory damages or maximum amount; and/or

      f.    imposition of such punitive or exemplary damages, and determination of the amount of an award thereof, based on anything other than Defendants' conduct in connection with the sale of the products at issue in this litigation, or in any other way subjecting Defendants to impermissible multiple punishment for the same alleged wrong.

### Nineteenth Defense

Defendants avers that any award of punitive damages to plaintiff in this case

would be violative of Article 1, section 6, of the Constitution of the State of

Alabama, which provides that no person shall be deprived of life, liberty or property except by due process of law, and that punitive damages are vague and are not rationally related to legitimate governmental interests and cannot constitutionally be imposed.

## Twentieth Defense

Defendants aver that any award of punitive damages to the plaintiff in this case would be violative of the procedural safeguards provided to defendant under the Sixth Amendment to the Constitution of the United States and that punitive damages are penal in nature, and, consequently, Defendants are entitled to the same procedural safeguards accorded to criminal defendants.

## Twenty-First Defense

Defendants assert that to impose against it punitive damages which are penal, and yet on the other hand to compel the defendants to disclose potentially incriminating documents into evidence, would be violative of the self-incrimination clause of the Fifth Amendment to the Constitution of the United States.

## Twenty-Second Defense

Defendants assert that to impose against it punitive damages, which are penal in nature, yet compel the defendants to disclose potentially incriminating

documents into evidence, is violative of Article 1, Section 6, of the Constitution of the State of Alabama.

## Reservation of Rights to Assert Additional Defenses

Defendants reserve all rights to amend this Answer to include additional Affirmative Defenses or remove inapplicable defenses. Plaintiffs' claims are ambiguous, their Complaint violates the rule against shotgun pleading, and the claims are otherwise so poorly plead that it is impossible to evaluate all possible defenses available at this point in the litigation.

# COUNTERCLAIM

## FACTUAL BACKGROUND

1.      Annette Carr is the principal of AAA Foods Enterprises Inc.

2.      AAA is a broker/trader and works with more than 30 suppliers and customers in the poultry, pork, and beef industries that AAA has developed in more than 20 years of work. AAA served as a broker/trader for Gemstone Foods, LLC ("Gemstone") and other poultry companies during 2013.

3.      AAA was never bound to conduct business exclusively with Gemstone or any other poultry company.

4.      Gemstone is located in Decatur, Alabama and operates two "cutting" or poultry portioning plants. One is located at 641 Holly Street Northeast in Decatur, Alabama. The other cutting plant is located at 805 McEntire Lane in Decatur, Alabama.

5.      RCF, LLC is a services company that provides plant, labor, accounting and other services to Gemstone and its customers.

6.      Mike Ensley introduced Ben Turnage of Gemstone to RCF in 2013. Turnage had no prior relationship or knowledge of RCF before Mike Ensley's introduction.

7.      On or around October 2013, Mike Ensley, while consulting for Gemstone, introduced AAA to Gemstone. Gemstone did not have the capability to process meat until March 2013.

8.      Ben Turnage, Gemstone's member, agreed to use AAA as a broker.

9.      AAA would secure poultry products for Gemstone with AAA's current suppliers using AAA's credit.

10.     Because Gemstone was a new entity, Gemstone had no established credit in the industry.

11.     In an effort to move some business to Gemstone in 2013, Mike Ensley asked AAA to help move business to Gemstone. Once Gemstone had the capability to process meat, Mike Ensley asked AAA to supply poultry because otherwise Gemstone was unknown in the industry and had no credit. AAA agreed to supply poultry because of its prior relationship with Mike Ensley. Throughout 2014, AAA negotiated credit lines directly for Gemstone to reduce its own exposure by fostering business relationships between Gemstone and AAA's suppliers.

12.     AAA used its own reputation in the industry and gave references on behalf of Gemstone. Many suppliers offered Gemstone credit because of the trust they had in AAA.

13.     AAA had to use its own credit and reputation to secure chicken for Gemstone to help establish Gemstone's relationships with current suppliers and to bring in a strong customer base.

14.     AAA works with suppliers and customers to secure poultry on behalf of many entities.  AAA is in constant communication with suppliers and customers throughout the work day, and worked vigorously to secure chicken supply and sales for Gemstone in 2013 and 2014 ("AAA's broker services"). As a result of AAA's relationships, AAA's brokerage services, and AAA's sales for Gemstone, Gemstone was extremely profitable in 2013 and 2014.

15.     Gemstone was more profitable in 2013 and 2014 than it was in 2015 and 2016.

16.     While using AAA's brokerage services, Gemstone never established lines of credit because Ben Turnage could not obtain credit, as he promised initially, and because he would not sign personal guarantees with any supplier.

17.     Gemstone continued to capitalize on AAA's credit, which AAA had secured by having Carr sign multiple personal guarantees.

18.     Gemstone also used AAA to coordinate transportation of chicken and recruit salaried managers to work at Gemstone.

19.     Ben Turnage also represented to AAA that Mike Ensley was an owner of Gemstone. Without the promise of future business, and without the false

representation about Ensley's ownership interest, AAA would have never floated Gemstone financially and foregone revenue on non-Gemstone brokerage transactions. AAA would have sold its products at a higher price to other customers, including to Gemstone's competitors. AAA damaged its own relationships with suppliers and customers by giving business to Gemstone that its competitors may have otherwise had.

20. Gemstone relied upon AAA's reputation in the chicken industry to gain access to chicken suppliers and customers that would not have otherwise conducted business with Gemstone. Gemstone relied upon AAA's already established relationships with various chicken suppliers and end users to purchase chicken at reduced rates and to sell the end products for a profit that would have otherwise not have been available to Gemstone.

21. Towards the end of 2013, in an attempt to lessen AAA's workload, AAA began having discussions with Gemstone about shifting some of AAA's administrative work associated with Gemstone over to Gemstone's staff (i.e., invoicing, bills of lading, etc.). The ultimate shift of administrative work started to happen in late 2014, but shortly after that, Gemstone terminated its relationship with AAA.

22.     With negotiations beginning as early as June 2014, in November 2014, Gemstone agreed to use AAA for procurement, marketing, transportation, and sales in securing 2015 business for Gemstone.

23.     During the November 2014 negotiations, Gemstone represented to AAA that if AAA would continue to negotiate deals on poultry for Gemstone, then Gemstone would continue to use AAA for procurement and sales, even after Gemstone's direct credit was established.

24.     AAA never agreed to sell chicken to Gemstone at a particular price, and never agreed to forego profit or any other business opportunities with other chicken companies. AAA only ever agreed to sell particular loads of chicken to Gemstone at ".05 back," meaning 5 cents below the UB market price. On occasion, when customers required extra product and the market was tight, AAA would seek permission to price outside the scope of the .05 agreement to complete the Gemstone customer's order.

25.     AAA was able to negotiate transactions for Gemstone at reduced costs because of Carr's knowledge of the industry, existing relationships with suppliers, and AAA's established credit with suppliers. The chicken purchased by Gemstone through AAA placed Gemstone in a competitive and highly favorable market position, allowing Gemstone to profit considerably.

26.     In many instances, AAA sold loads of chicken to Gemstone for less than what AAA could otherwise obtain on the open market to other buyers. AAA could have made higher profits from its sales to Gemstone by selling at higher prices that were still competitive in the market. Because of AAA's desire to help Gemstone secure credit, and because AAA was promised future business by Gemstone, AAA opted to sell to Gemstone at lower prices.

27.     During 2013 and most of 2014, AAA lost revenue on selling boneless skinless breast ("BSB") to Gemstone instead of selling to other customers. In reliance on Gemstone's representations that, if AAA sold products to Gemstone using AAA's relationships and credit, AAA would be the purchasing arm for Gemstone's future business, AAA sold BSB to Gemstone below the market price.

28.     AAA also lost revenue by selling chicken tenders below the market price to Gemstone, foregoing more profitable sales opportunities in reliance on the promised security of future business.

29.     Separately, Gemstone promised that, after securing its own credit and potentially taking over some of AAA's administrative responsibilities, Gemstone would pay AAA a commission on the deals AAA negotiated and secured from purchasers who committed (through AAA) to purchase Gemstone's product. Gemstone agreed to compensate AAA at a fixed fee per pound ("commissions") on or around October, 2014, for future sales.

30.     Although discussions started earlier, beginning the first week of November, 2014, Ben Turnage of Gemstone agreed to pay AAA .005¢ per pound on all the meat AAA contracted for on behalf of Gemstone for the remainder of 2014 and 2015.

31.     Starting at the end of 2014, Gemstone also agreed to pay commissions to AAA on direct sales of chicken to Wayne Farms.

32.     By the end of 2014, AAA had performed its end of the deal by securing at least 26 suppliers and customers for Gemstone.

33.     In violation of the agreement, Gemstone did not pay AAA for November or December 2014 commissions. Nor did Gemstone pay AAA for any 2015 commissions for purchasing and sales. Gemstone has readily admitted that it owes AAA money for commissions, but has refused to pay by falsely asserting that AAA overcharged Gemstone for chicken in violation of a "cost-plus" agreement that Gemstone has never identified and which the parties never entered into.

34.     Gemstone has accused AAA of committing fraud and fabricated a purported "cost plus agreement" to try to avoid its payment obligations to AAA.

35.     In further reliance on a promise of future business, AAA lost revenue on negotiated deals that were completed but never paid for by Gemstone. AAA also lost revenue by selling to Gemstone at lower prices than AAA would have otherwise sold to Gemstone's competitors.

36.     After Gemstone gained success throughout 2014, Ben Turnage decided to continue Gemstone's operations without the involvement of Mike Ensley and AAA. On November 29, 2014 Gemstone fired Mike Ensley, and on December 29, 2014, Ben Turnage sent an email to AAA asking for AAA to stop negotiating on behalf of Gemstone in the marketplace. On December 29, 2014 Ben Turnage represented via email that despite terminating the business relationship between Gemstone and AAA, "Gemstone will honor the commission agreement with you (including the tenders committed through 2015). . . ".

37.     At the end of 2014, Gemstone hired two employees without AAA's knowledge—Stites Easterling, Jr. ("Easterling"), and Tommy Knight ("Knight"). They were hired to purchase chicken on behalf of Gemstone using AAA's negotiated contracts for 2015.  Easterling was hired as VP of Sales, Marketing, and Purchasing. Easterling had no previous purchasing experience and very few sales contacts. Knight was hired as VP of operations. Knight had no poultry portioning experience.

38.     Gemstone hired these employees to avoid paying AAA commissions, but Gemstone needed AAA's established business and contracts, as well as committed business for 2015 in order to maintain supply and sales.

39.     Stites Easterling, Jr., and Tommy Knight lacked sufficient knowledge and experience in the wholesaling and custom chicken processing industries.

Gemstone has falsely blamed AAA, Carr, and a host of others for Gemstone's failings.

40.     In reality, Turnage replaced competent managers and employees with incompetent ones. Turnage's misguided attempt to replace seasoned industry veterans with younger and less expensive employees contributed to a dramatic decline in Gemstone's profitability.

41.     Unwilling to accept the consequences of his bad business decisions, Turnage has refused to pay Mike Ensley compensation owed to Ensley, and he has welshed on his obligations to pay AAA for chicken procured on behalf of Gemstone.

42.     On December 29, 2014, Ben Turnage sent an email to Carr asking AAA to cease any representation of Gemstone. However, throughout 2015 Gemstone continued to purchase chicken from Wayne Farms, Mountaire, Peco, and Pilgrims, and sell to Wayne Farms based upon contracts negotiated by AAA. AAA was never compensated for these contracts with commissions.

43.     In late 2016, Gemstone and RCF sent subpoenas to AAA's current suppliers to harass them and damage the business relationship between AAA, Carr, and those third parties. Even after the Court quashed the subpoenas, Gemstone and RCF sent a letter to the third party suppliers demanding that they respond to the subpoenas by producing the documents to AAA and Carr.

44.     Gemstone and RCF have also falsely labeled AAA and Carr as part of a criminal enterprise and criminal conspiracy. Gemstone and RCF have maintained those allegations in bad faith and for the purpose of harassment.

## COUNT I
## Breach of Contract

45.     Gemstone promised to pay AAA commissions for customer sales during 2014 and 2015 that AAA set up with Gemstone directly. Gemstone also promised to pay AAA commissions for all Gemstone sales to Wayne Farms starting at the end of 2014 and through 2015.

46.     In addition, AAA gave tender supply promised to AAA for 2015 to Gemstone, which Gemstone in turn sold for profit instead of portioning for customers. AAA could have retained this business for itself, but allowed Gemstone to have this piece of "brokerage" business in exchange for a commission on the 2015 tender deal. Gemstone has never paid AAA those commissions on the customers that AAA allowed Gemstone to profit on.

47.     AAA performed under the agreement, securing suppliers of chicken for Gemstone, and Gemstone currently continues to sell to customers that AAA brought to Gemstone through contacts and relationships.  AAA also secured Wayne Farms as a customer for the 2015 year.

48.     Gemstone breached the agreement by refusing to pay AAA for certain 2014 commissions and all 2015 commissions.

49.     In reliance on the promise of future business, AAA lost revenue by selling loads of chicken to Gemstone for less than what AAA could otherwise obtain on the open market. AAA also lost revenue on sales that AAA moved from other processors and set up with Gemstone to directly sell to, based on the agreement that she would be paid a commission on the sales.

50.     As a direct and proximate result of Plaintiffs' conduct, AAA has suffered damages, including but not limited to lost commissions and revenue for 2014 and 2015.

WHEREFORE, PREMISES CONSIDERED, AAA demands judgment against Plaintiffs in an amount to be determined by the trier of fact, plus any other relief that the Court deems proper.

## COUNT II
## Unjust Enrichment

51.     Plaintiffs have been unjustly enriched because they knowingly accepted the brokerage services and work performed by AAA, without compensating AAA as promised. Further, Gemstone's profits were a result of the personal and existing relationships of AAA, without which Gemstone would not have been able to secure chicken at the competitive price it was able to for 2014 and 2015.

52.     AAA conferred a direct benefit on Plaintiffs by using her existing credit when no suppliers were willing to extend credit to Gemstone due to lack of

Gemstone's reputation and Gemstone's unwillingness to provide an irrevocable letter of credit.

53.     AAA was only willing to accept the financial risk based on the belief that AAA would receive commissions for all transactions and the security of future business from Gemstone.

54.     Further, Gemstone represented to AAA that Mike Ensley was an owner of Gemstone, and AAA wanted to help Ensley's success.

55.     As a result of Gemstone's representations regarding future business, AAA lost revenue by selling loads of chicken to Gemstone for less than what AAA could otherwise obtain on the open market.

56.     Plaintiffs never fully paid commissions to AAA for its performance of services. AAA reasonably relied on the representations of Gemstone in offering its brokerage services to its detriment and Gemstone has been unjustly enriched through acceptance of AAA's brokerage services without paying AAA as promised.

57.     Gemstone continues to benefit financially from the contracts AAA secured for Gemstone, with suppliers and customers which were originally AAA's contacts. Gemstone also continues to benefit from the credit lines that AAA helped establish for Gemstone at the end of 2014.

WHEREFORE, PREMISES CONSIDERED, AAA demands judgment against Plaintiffs for the full amount of compensatory damages, interests, costs, attorneys' fees, and other relief that the Court deems proper.

Respectfully submitted this the 27th day of July, 2017.


*/s Ryan Hodinka*
One of the Attorneys for Defendants


**OF COUNSEL**:
M. Jefferson Starling, III
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 226-3406
Facsimile: (205) 226-8799
E-mail: jstarling@balch.com

Ryan Hodinka
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 226-3464
Facsimile: (205) 488-58848
E-mail: rhodinka@balch.com

Katie Clements
Balch & Bingham LLP
Post Office Box 306

Birmingham, AL 35201-0306
Telephone: (205) 226-8734
Facsimile: (205) 488-5711
E-mail: [kclements@balch.com](mailto:kclements@balch.com)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael Akers
Akers Law Group, PLLC
P.O. Box 280
Brandon, MS 39043
Email: mikeakers@akerslawgroup.com

Michael A. Heilman
Heilman Law Group, PA
4266 I-55 N. Suite 106
Jackson, MS 39211
Telephone (601)914-1025
Fax (601)960-4200
Email: mheilman@heilmanlawgroup.com

*s/ Ryan Hodinka*
Of Counsel