FILED

2018 Oct-29  PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEMSTONE FOODS, LLC et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:15-cv-2207-MHH** |
| | } | |
| **AAA FOODS ENTERPRISES, INC.; et al.,** | } | |
| | } | |
| **Defendants.** | } | |

---

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ENSLEY, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:15-cv-01179-MHH** |
| | } | |
| **BEN O. TURNAGE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AND/OR DISALLOW AMENDED ANSWER AND COUNTERCLAIMS OR, ALTERNATIVELY, TO DISMISS COUNTERCLAIMS UNDER RULE 12(b)(6)

COME NOW Gemstone Foods, LLC, and RCF, LLC, ("Plaintiffs"), through counsel, and file their Memorandum in Support of Motion to Strike and/or Disallow Amended Answer and Counterclaims under Rule 12(f) or, Alternatively, to Dismiss Counterclaims under Rule 12(b)(6):

## INTRODUCTION

This Court should strike and/or disallow Defendants' Amended Answer and Counterclaims for abuse of process, breach of contract, fraudulent inducement, violation of the Alabama Sales Representative's Contract Act, open account, account stated, and infliction of emotional distress.  From the outset, Defendants filed their amended pleading without leave of court and in contravention of Federal Rule of Civil Procedure 15(a)(2).  On this basis alone, the Court should strike Defendants' Amended Answer and Counterclaims from the record.

Additionally, in the present circumstance, Defendants did not simply amend their pleadings, as permitted by the Stipulation of Parties which has been approved by the Special Master and entered by the Court (assuming *arguendo* that leave of court had been sought and granted, which did not occur).  The Court should not allow Defendants, including Defendants Annette Carr ("Carr") and Matthew Wester ("Wester"), to assert completely new counterclaims at this stage of the litigation when both Carr and Wester were fully aware of the factual allegations from which the newly added counterclaims arise – as well as their right to assert these

counterclaims – even prior to commencement of this lawsuit approximately three (3) years ago.  Defendants have no valid excuse for waiting until after written discovery as well as the ESI proceeding have been substantially completed before unilaterally taking the liberty of amending to assert brand new counterclaims.

Similarly, the newly added counterclaims are compulsory in nature, meaning Defendants were required to assert them contemporaneously with their original answer and are now barred from asserting them.

Compounding matters, the majority of the underlying facts alleged within Defendants' amended answer and counterclaims are scandalous and impertinent to the litigation, including personal attacks on Plaintiff Ben Turnage as well as attacks on the Special Master's recent discovery rulings.  It is readily evident that Defendants' newly pled counterclaims are meant solely to harass Plaintiffs and lack any material basis in law or fact.  The Court should not permit the unilateral addition of this plethora of new counterclaims at this late stage in the litigation, as allowing Defendants to do so would unduly prejudice Plaintiffs.

Indeed, the ESI discovery proceeding, which has been conducted at tremendous expense to Plaintiffs, has essentially concluded in most material respects.  Defendants' have therefore unilaterally pled their newly conjured counterclaims after the parties have drafted hundreds of complex ESI search terms, exchanged the terms, run searches on their respective ESI using the terms, and

thereafter engaged in a lengthy process of revising the terms in order to appropriately limit the amount of ESI data responsive to them.  Plaintiffs also have completed the process of reviewing the hundreds of thousands (if not close to millions) of responsive ESI documents for privilege and formally produced to Defendants all responsive, discoverable information of which they are aware.  Defendants have done likewise with respect to Plaintiffs' ESI search terms, except that Defendants continue to refuse to produce all responsive discovery in accordance with the Special Master's discovery rulings.  Accordingly, allowing Defendants to "turn back the clock" would result in a large portion of this ESI discovery essentially having to be redone.  The Court should not allow this to occur.  At this point, under the circumstances, the proverbial train has left the station.

The reality behind Defendants' surly pled counterclaims is that the counterclaims are an expression of opposing counsels' discontent with present status of discovery proceedings and the procedural posture of this case.  Almost immediately after Plaintiffs filed this lawsuit, Defendants began their strategy of "force-feeding" the Court with repetitive filings challenging the Court's initial denial in full of Defendants' motion to dismiss (including at least three instances along with a request for reconsideration) brought under Federal Rule of Civil Procedure 12(b)(6).  Within their repetitive filings, Defendants consistently have argued that Plaintiffs' claims constitute "shotgun" pleadings and that most should be dismissed

essentially in order to "clean up" the matters at issue in this lawsuit.  The reality is that Defendants' strategy always was part of their efforts to limit the scope of this lawsuit, including – most importantly – the scope of allowable discovery, as part of Defendants' efforts to conceal their wrongful conduct.

At present, Defendants' strategy finally is beginning to unravel, and opposing counsel is unhappy that their clients' misconduct finally is being revealed.  Very recently, for example, Defendants for the first time divulged – only after the ESI process has concluded in most material respects – that one of their clients[1] actually possesses some type of external device on which a significant amount of Gemstone's corporate data was downloaded and stolen.[2]  Within their Original Complaint, and from the very first teleconference held by this Court, Plaintiffs have continually alleged that Defendants have wrongfully stolen and/or deleted Gemstone's corporate data for their own personal benefit and to Plaintiffs' detriment.  Despite the fact that Defendants have continuously refused for years to simply turn over all data relating to the poultry industry stored on the laptop of Defendant Michael Ensley ("Ensley"), which was generated during the period of Ensley's employment with Plaintiffs and

---

[1] As of the present date, opposing counsel has refused to divulge the identity of this "mystery" client.

[2] The Special Master presently is reviewing the scope of this information to determine whether any privileged information has become intertwined with Gemstone's corporate data, and Plaintiffs anticipate the return of their own corporate property soon.  But the untimely disclosure of this "issue," which demonstrates precisely what Plaintiffs have alleged from the outset of this lawsuit, has delayed the parties several months regarding their plan to commence the first "round" of depositions in the case before the end of August, 2018.

is Plaintiffs' corporate property and not Ensley's, portions of Plaintiffs' stolen data finally are surfacing.

Having demonstrated their disdain for the Court's prior rulings as explained above (and now apparently likewise with regard to the Special Master's discovery rulings) by repetitively re-urging their same previously-denied arguments, [3] Defendants' present strategy reveals their apparent determination to engage in a mudslinging contest that includes unilaterally asserting as many facially deficient counterclaims as they can possibly conjure in order to demonstrate their disagreement with the course of proceedings thus far in the lawsuit.  Put differently, if the Court will not do what opposing counsel demands, counsel has demonstrated they will force-feed the Court with their repetitive filings and spray the docket with numerous unfounded and salacious counterclaims.  And Defendants have done so in spite of their delay in asserting these counterclaims until after conclusion of written discovery and the ESI discovery proceeding.

In addition, as will be explained in greater detail below, even assuming this Court allows Defendants to assert their newly concocted counterclaims at this late stage of the litigation, several of Defendants' counterclaims (including their

---

[3] The most recent instance actually necessitated the Court's setting of an in-person hearing so the Court could explain in person and with painstaking detail that the Court has heard counsel's arguments, that the Court has fully considered and even reconsidered counsel's arguments, and that the Court has determined to deny Defendants' request for dismissal of Plaintiffs' claims at this juncture in the litigation but will consider Defendants' arguments for dismissal at the summary judgment stage when all evidence has been fully developed.

counterclaim for abuse of process; Wester's claims for breach of contract and fraudulent inducement; and Carr's claims for open account, account stated, quantum meruit, and infliction of emotional distress) are deficient as a matter of law and thus also are barred by the doctrine of futility.

First, Defendants' abuse of process claim is based primarily on (1) Plaintiffs' filing of their Complaint as well as their amendment thereto, (2) Plaintiffs' purported bad faith motivations, and (3) Plaintiffs' alleged discovery violations. Yet as a matter of law, none of the bases on which Defendants seek to proceed – the filing of a complaint commencing an ongoing lawsuit (whether or not the opposing party believes the complaint is frivolous), purported discovery violations in an ongoing lawsuit (which already have been addressed by the Special Master), and/or prosecuting an ongoing lawsuit while harboring bad faith motivations (which, again, Plaintiffs dispute) – give rise to claims for abuse of process. Because Defendants have failed to allege an actual abuse of process under Alabama law, the Court should strike this counterclaim under the doctrine of futility.

Next, Wester's claim for breach of contract and fraudulent inducement claims are wholly conclusory and are undergirded by insufficient facts to sustain the claims, even if taken as true. These claims therefore should likewise be stricken under the doctrine of futility. Under the plain terms of the inducement agreement referenced by Defendants, as will be further explained below, Plaintiffs agreed that information

gathered through any interviews with their private investigator would not be utilized in the present lawsuit.  Wester has failed to even allege what information, if any, Plaintiffs have used in this litigation that purportedly would constitute breach of this agreement.  Moreover, Wester's inducement claims also are barred by the statute of limitations.

Lastly, Defendant Carr cannot state a claim for relief on an open account, for account stated, for quantum meruit, or for intentional infliction of emotional distress (IIED).  Carr has failed to even allege the basic elements of these claims, much less plead plausible facts in support of them.  In addition, as a matter of law, a party cannot state a counterclaim for IIED as a result of being named a defendant in an ongoing lawsuit.  Again, the doctrine of futility bars these claims from going forward.

Defendants' newly pled counterclaims therefore can only be meant to harass Plaintiffs, including Ben Turnage personally, and to bog down what already is an extremely complex lawsuit, rather than to serve the interests of justice.  For these reasons, this Court should strike Defendants' Amended Answer and Counterclaims, particularly under circumstances where Defendants have never even sought leave of court to file the amendments and, furthermore, have filed the amendments at this late stage of the litigation.

## MATERIAL FACTS

1.      On January 9, 2015, Plaintiffs entered an inducement agreement with Matthew Wester.  The inducement agreement stated as follows:

> In order to encourage you to make a full and truthful disclosure as to matters under investigation at the plant sites of RCF, LLC in Decatur, AL, the company does hereby agree that it will not use any information obtained in the interview with you in connection with prosecution of any perceived misdeed in which you might have participated or in connection with any claim for civil liability of any nature in connection with any such activity disclosed by you.
>
> This covenant is made so that you may truthfully and honestly respond to all inquires made to you by our attorneys, Harris, Caddell & Shanks, P.C. of 214 Johnston Street SE, Decatur, AL, or any investigator acting upon its behalf. This agreement is with the understanding that you will not disclose matters addressed in this interview with current or past employees of RCF, LLC or its affiliates, or any other third party, without the written consent of RCF, LLC.

2.      On July 14, 2015, Michael Ensley and A&M Consulting, LLC, filed suit against Ben O. Turnage, *et al*., in the United States District Court for the Northern District of Alabama, Civil Action NO. 5:15-cv-01179.

3.      On October 19, 2015, Gemstone Foods, LLC, and RCF, LLC, filed suit against AAA Foods, Inc., et al., in the Circuit Court of Morgan County, Alabama, Civil Action No. 5:15-cv-01836.

4.      Defendants filed a notice of removal of the state court action from circuit court [Civil Action No. 5:15-cv-01836] to the United States District Court for the Northern District of Alabama.  Thereafter, before Defendants filed their Answer, Plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice under Federal Rule of Civil Procedure 41(a)(1)(i) in Civil Action 5:15-cv-01836-HGD.

5.      Plaintiffs filed their Original Complaint in this action on December 2, 2015, Civil Action 5:15-cv-02207-MHH. [Doc. 1].  Within their Original Complaint, Plaintiffs alleged that in connection with other Defendants, Defendant Wester violated the federal Civil RICO statute and committed predicate acts of racketeering activity, along with other common law causes of action.[4]

6.      The parties in *Gemstone Foods, LLC et al. v. AAA Foods, Inc. et al.*, No. 5:15-cv-02207-MHH, and *Michael Ensley et al. v. Ben O. Turnage et al.*, No. 5:15-cv-01179-HGD, filed a joint motion to consolidate the above lawsuits for purposes of discovery, pretrial proceedings, and trial.  The Court entered an order consolidating the two cases as requested by the parties.[5]

7.      After pursuing multiple motions to dismiss in which Defendants reargued the same legal theories the Court had already considered and denied (Defendants ultimately sought rulings from the Court on the same issues as many as four times, including a motion to reconsider), Defendants finally filed their Answer and Affirmative Defenses on July 27, 2017, which included limited counterclaims against Gemstone Foods, LLC, and RCF, LLC filed by AAA Foods, Inc., and Annette Carr.[6]

---

[4] *See* Docket No. 1.
[5] *See* Docket No. 60.
[6] *See* Docket No. 102.

8.     By agreement of the parties and pursuant to Federal Rule of Civil Procedure 53, the Court appointed Honorable J. Cal Mayo, Jr., as Special Master to handle the mounting discovery disputes between the parties.[7]  Under the Court's Order, the parties agreed that

> [i]f the parties cannot resolve a discovery dispute informally, then the parties may file a discovery motion with the Court.  If the Court receives a discovery motion, then the Court will refer the motion to Mr. Mayo, and Mr. Mayo shall prepare and file with the Court a report and recommendation concerning the discovery motion.  The Court will review any report and recommendation consistent with the procedures outlined in Federal Rule of Civil Procedure 53(f).[8]

9.     Throughout this litigation, various discovery disputes have arisen, as noted above, and the parties have filed multiple motions to compel.[9]  Each party has respectively alleged numerous discovery abuses by the other.[10]  In their motions, Defendants alleged that Plaintiffs provided inadequate discovery responses, missed multiple deadlines, and misrepresented their efforts to gather and preserve ESI, among other allegations.[11]

10.     On October 1, 2018, Defendants filed an Amended Answer and Counterclaims in which Defendants now assert completely new counterclaims,

---

[7] *See* Docket No. 83.

[8] *Id.*

[9] *See* Docket Nos. 110, 129, 135, 137, and 139.

[10] *Id.*

[11] *Id.*  Defendants' counsel have even wrongfully accused Plaintiffs' counsel of being "liars" on multiple occasions.  Whether wrong or right, however, these bald accusations are distasteful at best.  Yet Defendants' unprofessionalism, Plaintiffs' counsel have refused to "get in the mud" and wallow with Defendants' counsel.

including an abuse of process claim based on the procedural history of the present, ongoing lawsuit, which ultimately led to the Court's consolidation order in this case, along with various purported discovery violations.[12]  Likewise, Defendant Wester pled entirely new counterclaims based on theories of breach of the inducement agreement and fraudulent inducement.[13]

11.    While the Stipulation of Parties jointly filed on June 18, 2018, provides that "[t]he parties shall amend all pleadings by October 1, 2018[,]"[14] Defendants failed to seek leave of court prior to filing their Amended Answer and Counterclaims.  Plaintiffs can find no case law from Alabama's district courts which allows a party to unilaterally amend its pleadings without first requesting leave of Court to do so.  On the other hand, numerous published cases exist that demonstrate leave of court must be granted prior to filing amended pleadings, regardless of whether the party seeking leave to amend has done so within the deadline for amendments to pleadings.

12.    The factual allegations on which Defendants' newly pled abuse of process counterclaim is predicated appear at Paragraphs 45 through 59 of their Amended Answer and Counterclaims.[15]  Within their allegations, Defendants argue

---

[12] *See* Docket No. 149.
[13] *Id.*
[14] *See* Docket No. 147.
[15] *See* Docket No. 149.

that Plaintiffs and Ben Turnage have abused the litigation process by filing meritless claims "to avoid paying Ensley and Carr the amounts owed to them" along with committing numerous purported discovery violations.[16]

13.     On October 2, 2018, the Court entered a text Order, finding as moot the pending motions to compel discovery, including docket numbers 110, 129, 135, 137, and 139.[17]  The Court further expressed its understanding that "the parties have been working with the Special Master to resolve their discovery disputes."[18]

14.     Defendants also improperly allege that Plaintiffs filed a "frivolous" motion for preliminary injunction,[19] that Plaintiffs have missed or delayed over 100 deadlines,[20] that Plaintiffs' counsel lied about Plaintiffs' process of collecting electronically stored information (as noted above),[21] and that Plaintiffs intentionally failed to preserve ESI and destroyed evidence.[22]  Plaintiffs obviously dispute the vast majority if not all of Defendants' surly, sordid allegations.

## STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides as follows:

**(a) Amendments Before Trial.**

* * *

---

[16] *Id.*
[17] *See* Docket No. 150.
[18] *Id.*
[19] *Id.* at ¶49.
[20] *Id.*
[21] *Id.*
[22] *Id.* at ¶57.

**(2)** *Other Amendments.*  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Also, regarding amendments to pleadings, the rule of the Eleventh Circuit Court of Appeals is that "[a] district court is not required to grant a [party] leave to amend [its] complaint sua sponte when the [party], who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court. *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). The Eleventh Circuit also has held that "[a]lthough leave to amend should be liberally granted, a trial court is not required sua sponte to grant leave to amend prior to making its decision." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).  Under circumstances where the movant never files a motion for leave to amend, the Eleventh Circuit holds that no abuse of discretion can exist when a district court decides not to grant leave to amend. *Id.*

As an additional basis of authority for striking Defendants Amended Answer and Counterclaims, Federal Rule of Civil Procedure 12(f) provides that, upon motion, the "court may order stricken from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *In re Healthsouth Corp. Sec. Litig.*, 2000 WL 34211319, at *52 (N.D. Ala. Dec. 13, 2000) (citing Fed. R. Civ. P. 12(f)).

With regard to the substantive nature of the newly asserted counterclaims, Federal Rule of Civil Procedure 12(b)(6) "enables a defendant to move to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *United Gov't Sec. Officers of Am. v. Tennessee Valley Auth.*, 2017 WL 1196960, at *1 (N.D. Ala. Mar. 31, 2017) (citing Fed. R. Civ. P. 12(b)(6)). "A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the 'liberal pleading standards set forth by Rule 8(a)(2).'" *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff." *Id.* (citing *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015)).

I.     ***This Court Should Strike and/or Disallow Defendants' Amended Answer and Counterclaims.***

    A.     <u>Defendants' Amended Answer and Counterclaims Should Be Stricken Because It Was Filed Without Leave of Court and in Contravention of Federal Rule of Civil Procedure 15(a)(2).</u>

Regarding Defendants failure to seek leave of court prior to filing their Amended Answer and Counterclaims, Plaintiffs cannot improve upon the cogent analysis explained by this district's now-retired Honorable District Court Judge William M. Acker, Jr.  Accordingly, Judge Acker's analysis is set forth in full (in pertinent part) below:

Without seeking or obtaining leave of court, [the movant], on December 29, 2008, purported to file both an amended answer and a counterclaim. [The nonmovant] promptly moved to strike [the movant's] purported pleadings for the reason that they were filed in violation of Rule 15(a)(2), F.R.Civ.P., that requires prior leave of court or the written consent of the opposing party.

In its surly response to [the nonmovant's] motion, [the moving party] says:

In an era of ever-declining professionalism in Birmingham, Plaintiff's counsel has attempted to reach a new low by filing a Motion to Strike [the movant's] First Amended Answer to Complaint and Counterclaim (doc. 13), which was filed prior to the December 29, 2008 deadline for amending the pleadings set forth by the Court's Rule 16 Scheduling Order (doc. 9). As grounds for its motion, Plaintiffs asserts that [the movant] is required to file a formal motion for leave to amend, even for amendments filed prior to the Scheduling Order's deadline. [The nonmovant's] motion is completely without merit, as the Scheduling Order itself grants [the movant] leave to amend its Answer prior to December 29, 2008.

The court is pleased to learn that unprofessionalism has not crept beyond the borders of Birmingham.

Under the liberal rules for amending pleadings, this court would have granted a motion by [the movant] for leave to amend its answer and to file a counterclaim if such motion had been filed on December 29, 2008, along with the proposed pleadings, but no such motion was filed. Instead, [the movant] insists that this court pre-granted the required Rule 15(a)(2) motion by the simple expedient of entering the scheduling order. [The movant's] belief in this regard is erroneous. What if [the movant] had timely filed a motion for leave to amend with an accompanying proposed amended answer that was facially futile, or totally spurious, or simply scurrilous? Can a scheduling order that fixes a December 29, 2008 deadline for amending an answer mean that until December 29, 2008, the party operating under the said deadline may, with impunity, file whatever amendments he pleases, no matter how strange they may be? Rule 15(a)(2) contemplates an opportunity for the court to take a peek before a pleading is docketed. According to

[the movant's] reading of the scheduling order, it could, without filing a single motion for leave, have amended its answer 40 times, so long as all 40 amendments were filed on or before December 29, 2008. Presumptively, [the movant] believes that it could have also filed a counterclaim and several amendments to the counterclaim without formal leave, that is, if filed before December 29, 2008. This is not how this court and other courts interpret Rule 15(a)(2), and it is certainly not what this court intended in its scheduling order. This court regularly requires a formal motion for leave to amend during the period that precedes the cutoff date for amendments.

It was not unprofessional of [the nonmovant's] counsel to expect opposing counsel to conform to this court's routine expectations, as well as to comply with the express instructions of Rule 15(a)(2). This court's long-held understanding of Rule 15(a)(2) was succinctly captured as recently as December 23, 2008, by the Eastern District of California [], where it said:

In the Discovery Order/Scheduling Order of April 28, 2008, Magistrate Judge Snyder stated, "The deadline for amending the pleadings shall be October 27, 2008." (Doc. #36, p. 2.) **That order set a deadline for seeking leave to amend pleadings; it did not grant leave in advance to file unknown pleadings by that date.**

(emphasis supplied).

There are judges who, if no objection or motion to strike is filed in response to pleadings filed without prior formal leave, deem them to contain an implied motion for leave, and allow the pleading to be docketed and considered. This court is more of a stickler than that, believing that procedural rules have a purpose and must be followed.

*Vulcan Mktg., Inc. v. Tech. Consumer Products, Inc.*, 597 F. Supp. 2d 1266,

1267-68 (N.D. Ala. 2009), amended on denial of reconsideration, 614 F.

Supp. 2d 1253 (N.D. Ala. 2009). Put differently,

[t]he deadline for amending pleadings provided in the court's Rule 16(b) scheduling order does not dispense with the need to seek leave to

> amend.  Although a deadline for amending pleadings in the scheduling order establishes an outside limit for seeking leave to amend without a showing of good cause, amendments sought within the deadline still must meet the requirements of Rule 15(a).  The court of appeals consistently points to the language of Rule 15(a), even when a scheduling order has established a deadline for amendments.

*Gulf Coast Visuals Mgt. Co., LLC v. Wedelstedt*, 2:17-CV-121-TMP, 2018 WL 1244497, at *3 (N.D. Ala. Mar. 9, 2018).

Applied to the present case, Defendants amendments, including their newly asserted counterclaims, should be stricken from the record or otherwise prohibited from proceeding because Defendants never sought leave of court to amend their pleadings within the Court's established deadline for seeking leave to amend.  In turn, now that the deadline has expired, Defendants clearly cannot demonstrate "good cause" for reopening this deadline because as a matter of law, deficiencies in counsel's legal representation is not good cause. *See Manigault v. Colvin*, 2013 WL 12156674, at *3 (N.D. Ga. Mar. 19, 2013) (denying motion for leave to file amended complaint, rejecting the plaintiff's argument that her attorney's inaction constituted good cause under Federal Rule of Civil Procedure 15); *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause); *Pfeifer v. New Jersey Re-Ins. Co.*, 304 F.R.D. 478, 479 (D.N.J. 2015) (inadvertence or lack of diligence of counsel are generally insufficient to establish good cause for the extension of the time period); *In re Harnischfeger Industries, Inc.*, 288 B.R. 79,

86 (Bankr. D. Del. 2003) (good cause will not be found based on inadvertence or half-hearted efforts by counsel); *U.S. ex rel. Cody v. Computer Scis. Corp.*, 246 F.R.D. 22, 26 (D.D.C. 2007) (mistake of counsel or ignorance of the rules of procedure usually does not suffice to establish good cause). For this reason and this reason alone, the Court should not allow Defendants' amendments.

When combined with Defendants' additional acts of defiance of this Court's rulings, including the discovery rulings made by the Special Master as well as Defendants' unhinged over-aggression as demonstrated by their unilaterally filed and obviously baseless counterclaims, together with the material prejudice Plaintiffs will suffer if Defendants' counterclaims are allowed to proceed at this stage of the litigation, no compelling reasons exist to provide Defendants with any gratuitous latitude at this point. Defendants' counterclaims are out-of-time, baseless, and wreak of defiance for the Court's authority. The counterclaims would only serve to significantly broaden the scope of the present litigation and require the parties to essentially begin anew with discovery.

B.   Likewise, Defendants Newly Asserted Counterclaims Are Barred.

Instead, Defendants have asserted completely new counterclaims, at least one of which is based on a contract that Defendants had never so much as even referenced within their prior pleadings, as well as factual allegations of which

Defendants were fully aware prior to the date on which the present lawsuit was first commenced.

This concept is foreign to undersigned counsel.  While it is true that parties must only demonstrate good cause for leave to amend under circumstances where request to reopen deadlines is made after their expiration, Plaintiffs nevertheless have never heard of a circumstance where parties are allowed to simply file amended pleadings unilaterally and without leave of court.  Indeed, material reasons exist for the requirement that leave of court must be requested, including but not limited to the opposing party's right to oppose such a request on the basis of futility (just as Plaintiffs have alleged in the present filing).

The Court should strike and/or disallow the Amended Answer & Counterclaims because Defendants unduly delayed in bringing these new counterclaims.  The new counterclaims will also require additional discovery at this late stage of the litigation and unduly prejudice the Plaintiffs.  Finally, many of the new counterclaims are futile because Defendants cannot state a claim for relief under Rule 12(b)(6).  The amendments should be stricken.

"A party failing to assert a compulsory counterclaim is barred from doing so in the future, as the counterclaim has been waived." *Byrd v. Williams*, 2016 WL 362404, at *4 (N.D. Ala. Jan. 29, 2016) (citing *Brooks v. Peoples Nat'l Bank of Huntsville*, 414 So. 2d 917, 920 (Ala. 1982)).  Here, because the Defendants failed

to file compulsory counterclaims of which they have been aware since the inception of this lawsuit, this Court should strike the new compulsory Counterclaims. *Id.*

"[T]he Federal Rules of Civil Procedure direct that parties be permitted to amend pleadings 'when justice requires.'" *Id.* (citing Fed. R. Civ. P. 15(a)(2)).  Rule 15 "'is not carte blanche authority to amend . . . at any time.'"  *Burkett v. American Gen. Fin., Inc.,* 607 So.2d 138, 141 (Ala. 1992) (quoting *Stallings v. Angelica Uniform Co.,* 388 So. 2d 942, 947 (Ala. 1980)).  The deadline in the scheduling order does not curtail the trial court's discretion in considering the merits of the offered amendment. *Blackmon v. Nexity Fin. Corp.*, 953 So. 2d 1180, 1189 (Ala. 2006) (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1066 (8th Cir. 2005)).

"A district court need not allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or requested failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Under the Scheduling Order, Defendants were permitted leave to amend pleadings, not to file new counterclaims based on new theories years after the filing of their initial Answer, after the parties have engaged in written discovery, and on the eve of depositions. *See Blackmon*, 953 So. 2d at 1189 (citing *Moses.com Sec.,*

*Inc.,* 406 F.3d at 1066 (holding that "the scheduling order merely prescribes the date by which all [motions to amend] 'shall be filed;' the date on the scheduling order does not confine the district court's consideration of the merits of such motions and does not preclude it from finding that an amendment would result in prejudice").

Defendants have unduly delayed in bringing these new claims.  Wester's breach of contract and fraudulent inducement claims are based on an inducement agreement that he entered on January 9, 2015.[23]  Wester contends that Plaintiffs breached this agreement when they filed the instant lawsuit, which occurred on December 2, 2015.[24]  Accordingly, Wester has been aware of these alleged causes of action since the filing of this action and has only now asserted his counterclaim.[25] He should be barred from doing so due to his inexcusable delay.  As the Eleventh Circuit has ruled,

> [t]hough we are mindful of the fact that [the movant] was unable to obtain important information needed to pursue this claim until [a key] deposition in March of 1994, it appears that the basic facts giving rise to the retaliation theory were available when the second amended complaint was filed.  The considerable delay in seeking to amend the complaint . . . appears to have been unwarranted.

*Jameson v. Arrow Co.*, 75 F.3d 1528, 1535 (11th Cir. 1996).

---

[23] *See* Docket No. 149-1.
[24] *See* Docket No. 1.
[25] *See* Docket No. 149-1.

In addition, Carr's new counterclaims for violation of the Alabama Sales Representatives Contract Act, open account, account stated, and quantum meruit are all based on alleged commissions earned in 2014 and 2015.  These compulsory claims were available to Carr years ago.  In addition, Carr has been a defendant in this lawsuit since 2015, and her purported emotional distress is not new. Carr should not be permitted to await the end of discovery and on the eve of depositions to spring completely new theories of recovery on Plaintiffs.

Because Defendants have waited years without excuse to bring these compulsory claims and failed to seek leave to amend to add new claims, this Court should strike and/or disallow Defendants' new counterclaims that have been available to them since the inception of this lawsuit. *See Blackmon*, 953 So. 2d at 1189 (Ala. 2006) (citing *Rector v. Better Houses, Inc.,* 820 So. 2d 75, 78 (Ala. 2001) (holding that the trial court properly struck the amended complaint when the plaintiff offered no reason to refute the trial court's finding that the new allegations in the amended complaint were based on facts the plaintiff had known since the beginning of the action); *Burkett,* 607 So.2d at 141 (holding that the trial court did not exceed its discretion in striking the amended complaint where the plaintiffs had learned of the facts underlying the new allegations six months before they attempted to amend); *Hester v. Int'l Union of Operating Engineers, AFL-CIO*, 941 F.2d 1574, 1579 (11th Cir. 1991) ("Given the long history of this case, and the opportunities for

[Plaintiff] to attempt to cure the deficiencies in the complaint, [Plaintiff's] proposed amendment was clearly untimely; the district court did not abuse its discretion by refusing to allow it.").

Not only have Defendants unduly delayed in bringing these new counterclaims of which they have been aware for years, but their timing will unduly prejudice Plaintiffs, if allowed.  The discovery deadline is February 28, 2019.[26]  The discovery in this case has been extremely contentious, requiring Plaintiffs to file multiple motions to compel to receive even the most basic documents.  To date, Plaintiffs have not even received basic documents in discovery, including Carr and AAA's bank statements which were required to be produced.

After the Court just denied the pending motion to compel as moot,[27] Defendants have filed completely new causes of action that will require additional discovery in this case.  Indeed, the face of the counterclaims makes clear that Defendants have brought these claims at the last minute to harass the Plaintiffs and not for the interests of justice.

Based on Defendants' dilatory conduct, Plaintiffs will need to conduct additional discovery as to Wester's entry of the inducement agreement, including anyone Wester spoke with regarding the inducement agreement as well as his alleged

---

[26] *See* Docket No. 148.
[27] *See* Docket No. 150.

damages.  Plaintiffs will also need production of all documents that Carr and AAA contend support their claim for commissions under the Alabama Sales Representatives' Act, including all underlying documentation that has yet to be produced by Carr and AAA in this action to date and all her alleged efforts to enter sales contracts with vendors, including her work performed in 2015.  Plaintiffs will also have to conduct discovery on Annette Carr's alleged IIED claim, which will necessarily include interrogatory requests related to places she has received medical treatment as well as documents requested for her medical records and medical history.  As the Court is well aware, medical records requests can take a substantial amount of time not only to gather but also to review.

Because Defendants have unduly delayed in amending to bring claims they have known about for years, this Court should strike and/or disallow the new counterclaims because they will materially prejudice Plaintiffs' defense to these allegations. Moreover, as set forth herein, certain of Defendants' new counterclaims are futile and meant solely to harass Plaintiffs, and Defendants cannot state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.   *Defendants' Counterclaim for Abuse of Process Fails To State a Claim under Federal Rule of Civil Procedure 12(b)(6).*

Defendants' new counterclaims fail to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of

process, and 3) malice. *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998) (*Triple J Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1225 (Ala. 1993)).

>   A.   <u>Defendants' Abuse of Process Claim Fails To Set Forth a Plausible Claim under the Pleadings Standards of Federal Rule of Civil Procedure 8(a)(2).</u>

Defendants baldly contend that Plaintiffs through Turnage have a practice of abusing the litigation process to avoid paying legitimate debts and have in this case made misrepresentations and destroyed evidence. These allegations are wholly conclusory and are intended to retaliate against Plaintiffs for filing the present lawsuit.  Defendants allege no facts in support of their bald allegations in complete violation of Federal Rule of Civil Procedure 8(a)(2).

Plaintiffs must plead all facts establishing an entitlement to relief with more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007).  The complaint must contain enough facts to make a claim for relief plausible on its face; a party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

In addition, Defendants' allegations that Plaintiffs' pleadings before the Alabama state court were frivolous is wholly conclusory and in violation of Federal Rule of Civil Procedure 8(a), thus providing another reason for dismissal.  To date,

Defendants have attempted to have Plaintiffs' Complaint dismissed numerous times and in repetitive fashion.  Despite Defendants' refusal to accept this Court's ruling and apparent disdain for the Court's authority, this Court has repetitively denied Defendants' redundant motions.

Obviously upset over the present status of this litigation, Defendants continue to disregard this Court's rulings and have now filed an abuse of process claim alleging frivolity with respect to Plaintiffs' claims.  Defendants, however, have failed to provide any support for their contention that the Plaintiffs' claims are in fact frivolous, choosing instead to rely on bald allegations and conclusory labels:

- "In response to Ensley's suit, and to avoid paying Ensley and Carr the amounts owed to them, Turnage, Gemstone, and RCF filed meritless claims in Alabama state court."[28]

- "After Ensley and his co-defendants expended significant resources removing the state case to federal court, Turnage, Gemstone, and RCF dismissed the frivolous state court claims."[29]

- "Turnage, Gemstone, and RCF knew from the outset that they do not have colorable claims."[30]

- "Gemstone and Turnage also knew from the outset that they lack a colorable basis to accuse Defendants/Counterclaim-Plaintiffs of committing predicate acts of racketeering activity."[31]

---

[28] *See* Docket No. 149 at ¶ 47.
[29] *Id.* at ¶ 48.
[30] *Id.* at ¶ 52.
[31] *Id.* at ¶ 53.

Defendants have alleged no facts that the claims filed by Gemstone and RCF were meritless claims in Alabama state court or that the claims at issue in this case are meritless or lack a colorable basis.  Aside from alleged discovery violations, which are addressed in detail herein, Defendants only specific allegation of lacking a colorable claim relates to the pleading of a written cost-plus agreement. [32]

Again, even assuming the truth of this allegation, as set forth herein, an alleged frivolous Complaint alone does not give rise to a cause of action for abuse of process. *See Kizer v. Finch*, 730 So. 2d 1197, 1200 (Ala. Civ. App. 1998) (citing *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 951 (Ala. 1998) (holding "[w]rongful activity designed to create a claim [e.g., "manufacturing evidence"] goes to the initiation of process, not to its later use. . . .  Any question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse of process claim.").  Defendants have alleged no abuse of legal process after the initial filing of the Complaint. *Haynes v. Coleman*, 30 So. 3d 420, 425 (Ala. Civ. App. 2009) (citing *Preskitt v. Lyons,* 865 So.2d 424, 430 (Ala. 2003) (noting that "[l]egal process has been defined . . . [is] 'a summons, writ, warrant, mandate, or other process issuing from a *court.*'" (emphasis added).

---

[32] *Id.* at ¶ 52.

Because the Plaintiffs' abuse of process claim is conclusory and does not allege an abuse of legal process after the filing of the initial Complaint, this Court should dismiss the counterclaim for abuse of process.

B.   Plaintiffs' Allegation of an Ulterior Motive Does Not Constitute Abuse of Process.

In addition to failing to comply with Rule 8(a)(2), Defendants' bald contentions fail to state a claim for which relief may be granted under Rule 12(b)(6), including Defendants' allegations that Plaintiffs abused process by (1) filing, dismissing, and re-filing a frivolous lawsuit to avoid paying a debt and (2) by engaging in discovery violations, including making misrepresentations and destroying evidence.[33]  None of these factual allegations, even if taken as true for purposes of this motion, suffices to state a claim for abuse of process under Alabama law.

Defendants allege that Plaintiffs' lawsuits against Defendants have been frivolous and Defendants filed them with an ulterior motive: to avoid paying debts to Ensley and Carr.[34]  As an initial matter, Defendants cannot state a claim for abuse of process by alleging that Plaintiffs filed a Complaint for an ulterior motive or any allegedly frivolous pleading.

---

[33] *Id.* at ¶¶ 45-59.
[34] *Id.*

A defendant is "not liable for abuse of process simply because it prosecuted [the plaintiff] with an ulterior purpose." *Yeomans v. Forster & Howell, Inc.*, 2010 WL 3716394, at *12 (M.D. Ala. Sept. 10, 2010) (citing *Hagood*, 711 So. 2d at 950)); *see also Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995) ("[T]here is nothing *per se* irregular in a plaintiff's filing a complaint that seeks high—even unrealistic—damages,[8] or in causing a litigation opponent to spend money in defense").

"Malicious prosecution concerns the wrongful *issuance* of process; abuse of process concerns the wrongful *use* of process *after it has been issued.*" *C.C. & J., Inc. v. Hagood,* 711 So. 2d 947, 950 (Ala. 1998) (citing *Warwick Dev. Co. v. GV Corp.,* 469 So. 2d 1270, 1274 (Ala. 1985) (further citation omitted). Defendants have failed to allege any "wrongful use of process after it has been issued" in connection with the filing and dismissal of pleadings in accordance with Federal Rule of Civil Procedure 41(a)(1)(i). *Id.*

Here, Plaintiffs filed suit in state court and, after removal, dismissed those claims in accordance with Federal Rule of Civil Procedure 41(a)(1)(i) and filed again in federal court. "[A]buse of process will not lie [where] no result was obtained that is unlawful or improperly attainable under the law." *Moon v. Pillion*, 2 So. 3d 842, 847 (Ala. 2008) (citing *Dempsey v. Denman,* 442 So.2d 63, 65 (Ala. 1983)). Plaintiffs did not abuse process by dismissing the state law case after removal, but before an answer. Defendants must allege that Plaintiffs abused

process after the filing of the lawsuit, not simply filed lawsuits. "Filing of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent." *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995); *see also, e.g., Vahlsing v. Commercial Union Ins. Co.,* 928 F.2d 486, 490 (1st Cir. 1991) (applying Texas law); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W. 2d 377, 379 (Tex. Ct. App. 1989); *Grell v. Poulsen,* 389 N.W. 2d 661, 663-64 (Iowa 1986).

In sum, because Defendants' abuse of process claim fails under Federal Rules of Civil Procedure 8(a) and 12(b)(6), this Court should dismiss this counterclaim with prejudice.

C.    Plaintiffs' Alleged Discovery Abuses Do Not Give Rise To a Claim for Abuse of Process.

Defendants go to great lengths to describe various discovery violations committed by Plaintiffs after the filing of the lawsuit, contending that Plaintiffs (1) lied about collecting electronically stored information,[35] (2) failed to preserve ESI,[36] and (3) misrepresented their document preservation efforts and destroyed evidence.[37]  These allegations do not constitute use of process and are at most baldly

---

[35] *Id.* at ¶55.
[36] *Id.* at ¶57.
[37] *Id.* at ¶58.

alleged complaints of discovery abuses.   Aside from the filing of the initial Complaint, Defendants have failed to identify any subsequent abuse of process.

Aside from violating Rule 8(a)(2) and Twombly's plausibility requirements, being wholly conclusory, Defendants completely ignore that this Court ordered that the parties' discovery disputes be submitted to the Special Master for resolution and the parties agreed.   Indeed, the Special Master has discussed the issues raised by Defendants in their Counterclaims and recently this Court has found the Motion to Compel to be moot.[38]   The Defendants should be prohibited from circumventing the discovery process in this case and pursuing an untimely and deficient abuse of process claim.

In addition, Defendants' allegations that Plaintiffs engaged in discovery violations fail to support a claim for abuse of process as a matter of law.   As several courts have recognized, holding otherwise would turn every perceived discovery violation into an abuse of process claim. *See PPG Industries, Inc. v. Payne*, No. 3:10–CV–73, 2012 WL 1836314, at *11 (E.D. Tenn. May 21, 2012) (granting summary judgment on an abuse of process claim, which was based in part upon "alleged excessive litigation tactics," where litigation was "contentious" and there was a "document dump[.]"); *Westfield Ins. Co. v. Mitchell*, 2013 WL 4742832, at *5 (S.D. W. Va. Sept. 3, 2013) (alleged intentional failure to produce documents under

---

[38] *See* Docket No. 150.

Rule 26(a)(1) "would not be sufficient to support an abuse of process claim[;]" at most it would "suggest a violation of civil discovery rules.") (quotations and citation omitted); *see also, Flores v. Emerich & Fike*, 2008 WL 2489900, at *13 (E.D. Cal. June 18, 2008) ("alleged involvement in the destruction of evidence" not an abuse of process because "inherently part of the discovery process" and would be "redressible under discovery rules[.]").

If this Court were to allow Defendants' counterclaim arising from alleged abuse of process based on a purported discovery violation <u>in the very same action which presently is being litigated</u>, "every perceived instance of discovery abuse would generate an additional lawsuit for abuse of process, and every lawsuit would potentially generate ten more, *ad infinitum*, along the lines of *The Sorcerer's Apprentice*.  This certainly cannot be." *State Farm Mut. Auto. Ins. Co. v. Universal Rehab Servs., Inc.*, No. 2:15-CV-10993, 2017 WL 1304984, at *8 (E.D. Mich. Mar. 30, 2017).

Accordingly, this Court should grant Plaintiffs' Motion to Dismiss Defendants' Counterclaim for Abuse of Process.  Defendants should not be permitted to wait until the eleventh hour to add a new claim for abuse of process based on alleged discovery violations in a pending case.[39]  Holding otherwise would

---

[39] Indeed, the Court has held the pending discovery motions, which address the issues raised by Defendants, as moot.  As such, Defendants are collaterally estopped from raising those issues.

allow every party to amend to add a counterclaim every time a perceived discovery violation occurred.

### III.   Defendant Wester's Counterclaims for Breach of Contract and Fraudulent Inducement Fail to State a Claim for which Relief Can Be Granted under Federal Rule of Civil Procedure 12(b)(6).

Wester's breach of contract claims likewise fails.  The plain terms of the inducement agreement state that Plaintiffs will not bring suit for anything said in the interview, not that the Plaintiffs would never, under any circumstances, bring suit against Wester.[40]  In the inducement agreement, Plaintiffs agree that "**it will not use any information obtained in the interview with you** in connection with prosecution of any perceived misdeed[.]"[41]

The counterclaim fails to allege the information that Plaintiffs learned in the interview and has employed as a basis for bringing the instant lawsuit in violation of the inducement agreement.  Therefore, Wester's counterclaim for breach of contract fails under the pleadings standards of Federal Rule of Civil Procedure 8(a) as well as under *Twombly'*s plausibility standard. *Vaughn v. Outokumpu Stainless Steel USA, LLC*, 2018 WL 4137086, at *1 (S.D. Ala. Aug. 7, 2018) (citing *Twombly*, 550 U.S. at 555) (Post-*Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

[40] *See* Docket No. 149-1.
[41] *Id.* (emphasis added).

recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level[.]'").

Likewise, the fraudulent inducement claim fails to allege that Russell intended to deceive Wester when making the alleged material misrepresentations about a future event. *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014) ("If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive."). Therefore, this claim should be dismissed as well.

The fraudulent inducement claim is also barred by the statute of limitations and should be dismissed. *Sirmon v. Wyndham Vacation Resorts, Inc.*, 922 F. Supp. 2d 1261, 1272 (N.D. Ala. 2013) (Alabama's statute of limitations for claims based upon fraud or fraudulent inducement is two years).  "The two-year limitations period begins to run when a plaintiff is privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" *Id.* (citing *Auto-Owners Ins. Co. v. Abston,* 822 So. 2d 1187, 1195 (Ala. 2001) (quoting *Willcutt v. Union Oil Co.,* 432 So. 2d 1217, 1219 (Ala. 1983)).  Here, Plaintiffs filed their Original Complaint in December of 2015.  The statute of limitations on Wester's fraudulent inducement claim thus ran

in December of 2017.  This Court should therefore dismiss Wester's counterclaim with prejudice.

## IV. AAA and Carr's New Counterclaims Fail To State a Claim for Which Relief Can Be Granted under Federal Rule of Civil Procedure 12(b)(6).

Assuming this Court allows Carr to bring completely new claims at the eleventh hour, this Court should dismiss these claims under Federal Rule of Civil Procedure 12(b)(6), including the counterclaims for IIED, open account, account stated, and quantum meruit.

In *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980), the Supreme Court of Alabama recognized the tort of outrage. *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1438, 1452–53 (M.D. Ala. 1996).  "Under the tort of outrage, liability is imposed for 'unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress.'" *Id.* (citing *Inmon* 394 So. 2d at 365).  "The court emphasized the severity of the conduct required to support an outrage claim: 'conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.*

"To establish the tort of outrage, the plaintiff must prove three elements: '(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme

and outrageous; and (3) the distress was severe.'" *Id.* (citing *Moore v. Spiller Associated Furniture, Inc.,* 598 So.2d 835 (Ala.1992) (quoting *Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990)).

Carr cannot state claim for intentional infliction of emotional distress for filing an allegedly frivolous Complaint against Carr.  First of all, there are no facts that support the bald allegation that the Complaint is frivolous.  Rather, Carr broadly exclaims that she is not a criminal and that the Complaint is baseless.  Carr has therefore failed to plead plausible facts giving rise to the claim for IIED.  *See Curry v. Huntington Copper, LLC*, 2014 WL 4828106, at *3 (N.D.N.Y. Sept. 29, 2014) ("Even if Curry made these allegations knowing they are false, as a matter of law, such is not sufficiently extreme and outrageous to state a plausible IIED claim").[42] In addition, if every time a litigant was sued, he or she had the right to counterclaim for IIED (or outrage) by virtue of being named a defendant in a lawsuit, then the Court systems would be overrun with frivolous counterclaims for IIED.  This is not and cannot be the law.  Defendants have adduced no evidence that Plaintiffs' conduct

---

[42] *See also Harrison v. Luse,* 760 F. Supp. 1394, 1402–03 (D. Colo. 1991) (holding, under the circumstances of the case, that the filing of a frivolous and groundless civil action and the filing of another civil action for the purpose of harassing, embarrassing, inconveniencing, and intimidating the defendant did not reach the threshold level of conduct necessary to support a claim for outrageous conduct); *Early Detection Ctr., P.C. v. New York Life Ins. Co.,* 157 Mich. App. 618, 403 N.W.2d 830, 834 (1986) (holding that the filing of a groundless lawsuit was not of such an extreme nature so as to be characterized as outrageous and atrocious).

in bringing the lawsuit was extreme or outrageous.  Finally, this IIED claim is barred by statute of limitations.  Ala. Code § 6-2-38.

Carr's additional counterclaims for open account, account stated, and quantum meruit are also deficient as a matter of law.  "A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." *Mahoney v. Loma Alta Prop. Owners Ass'n, Inc.*, 4 So. 3d 1130, 1134 (Ala. Civ. App. 2008) (further citation omitted).  Here, Defendants have not alleged a statement of the account, a meeting of the minds, or the debtor's admission of liability.[43]  Rather, the Defendants simply allege that Plaintiffs owe commissions to Defendants Carr and AAA.[44]  This allegation is insufficient to state a claim for account stated.

Likewise, Defendants have failed to allege the necessary elements to state a *prima facie* claim for open account.  "A plaintiff establishes a prima facie case in an action for money due on open account by presenting evidence that money was delivered to the defendant, that it was a loan, and that it has not been repaid." *Ayers v. Cavalry SVP I, LLC*, 876 So. 2d 474, 478 (Ala. Civ. App. 2003) (citing *Livingston*

---

[43] *See* Docket No. 149 at ¶¶105-07.
[44] *Id.*

*v. Tapscott,* 585 So. 2d 839, 841 (Ala. 1991) (citing 58 C.J.S. *Money Lent* § 7 (1948)).  Here, Defendants have not alleged delivery of money to Defendant, a loan, or failure to repay a loan.  Accordingly, this claim should be dismissed.

Finally, Defendants' quantum meruit claim fails to even allege the "accepted services rendered by AAA Foods and Carr" including the time period that these services were rendered or otherwise.  This claim is likewise wholly conclusory and without any factual support.

In sum, this Court should disallow the new counterclaims not only because the Defendants have delayed in asserting these counterclaims, causing prejudice to Plaintiffs, but also because they as they are futile under Federal Rule of Civil Procedure 12(b)(6).

## V.   *Alternatively, this Court Should Strike the Scandalous and Impertinent Allegations Set Forth Within Defendants' Amended Counterclaims.*

Federal Rule of Civil Procedure 12(f) provides that, upon motion, the "court may order stricken from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *In re Healthsouth Corp. Sec. Litig.*, 2000 WL 34211319, at *52 (N.D. Ala. Dec. 13, 2000) (citing Fed. R. Civ. P. 12(f)).

The word "scandalous" in Rule 12(f) generally refers to any allegation that "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *S.D. v. St. Johns Cty. Sch. Dist.*, 2009 WL 1941482, at *4 (M.D. Fla. July 7, 2009) (citing *Khalid Bin Talal*

*v. E.F. Hutton & Co.,* 720 F. Supp. 671, 686 (N.D. Ill. 1989) (quotations and citations omitted); *S.E.C. v. Lauer*, 2007 WL 1393917, at *2 (S.D. Fla. April 30, 2007) (striking as scandalous a letter that accused attorneys of immoral and unethical conduct without any legitimate basis).

Defendants baldly contend that Plaintiffs through Turnage have a practice of abusing the litigation process to avoid paying legitimate debts and that Turnage, Gemstone, and RCF have made misrepresentations throughout the discovery process and destroyed evidence:

- "Turnage, Gemstone, and RCF larded their First Amended Complaint with false, hyperbolic, and distorted allegations that have no basis in reality. Indeed, when asked to identify basic facts underlying their RICO allegations, Turnage, Gemstone, and RCF could not nothing more than copy-and-paste the false allegations from their First Amended Complaint into interrogatories";[45]

- "Making false allegations against a party to whom Ben Turnage owes money is consistent with his pattern and practice of filing litigation in bad faith to welch on debts owed to creditors and to avoid paying employees, business partners, and vendors money they are owed";[46]

- "Turnage, Gemstone, and RCF lied about collecting electronically-stored information (ESI) by having their counsel inform defense counsel that ESI was being reviewed when it had not, in fact, been collected");[47]

- "Turnage, Gemstone, and RCF also intentionally failed to preserve evidence";[48]

---

[45] *See* Docket No. 149 at ¶53.
[46] *Id.* at ¶54.
[47] *Id.* at ¶55.
[48] *Id.* at ¶57.

- "Being a frequent litigant, Turnage knew that he could buy time by lying about his document collection efforts so that he could delete evidence and so that evidence held by Gemstone and RCF's employees would be destroyed in the ordinary course of business".[49]

Defendants' allegations concerning Turnage's propensity for frivolous litigation are wholly conclusory with no factual support and are meant solely to harass and belittle Turnage, unnecessarily attacking Turnage's moral character and baldly accusing him of deleting evidence.

Moreover, personally attacking Turnage in the form of an eleventh-hour counterclaim for abuse of process based on alleged misrepresentations in discovery is impertinent to this litigation. The parties agreed and the Court has ordered that Special Master Cal Mayo is to handle alleged discovery violations among the parties. If Defendants nevertheless have issues with the discovery process and dispute Mr. Mayo's rulings, they should (and have) pursue those issues with Mr. Mayo, with an opportunity to appeal to this Court thereafter, instead of attempting to circumvent the discovery process by filing a frivolous abuse of process claim.

Accordingly, these allegations in the counterclaims likewise should be stricken as scandalous and impertinent under Federal Rule of Civil Procedure 12(f).

---

[49] *Id.* at ¶58.

## CONCLUSION

In sum, this Court should strike Defendants' new counterclaims for abuse of process, breach of contract, and fraudulent inducement.  At this advanced stage of the litigation, Defendants should not be permitted to now assert counterclaims they have known about since the inception of this litigation.  In addition, Defendants' counterclaims are futile, meant solely to harass Plaintiffs and to circumvent the Special Master's discovery rulings in this case, and fail to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  But even setting aside all of this, any of which provide the Court with a proper basis to grant the relief sought by Plaintiffs, the death knell for Defendants' counterclaims very well might – in the Court's discretion – that Defendants failed to ever even move for leave to file their Amended Answer and Counterclaims prior to expiration of the deadline for amendment of pleadings in this lawsuit.  Indeed, even at present, Defendants have not sought leave, so for this reason alone, as well, the Court should strike Defendants' amendments and newly asserted counterclaims.

Respectfully submitted, this the 29th day of October, 2018.

*/s/ Michael A. Heilman*
Michael A. Heilman
COUNSEL FOR PLAINTIFFS AND
COUNTER-DEFENDANTS

OF COUNSEL:
Michael A. Akers (AL Bar No. 4331-R74M)
AKERS LAW GROUP, PLLC
P.O. Box 280
Brandon, Mississippi 39043
mikeakers@akerslawgroup.com

Michael A. Heilman (admitted *pro hac vice*)
John W. Nisbett (admitted *pro hac vice*)
HEILMAN LAW GROUP, P. A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914.1025
Facsimile: (601) 960-4200
mheilman@heilmanlawgroup.com
jnisbett@heilmanlawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court

using the ECF system, which sent notification to all counsel of record.

This the 29th day of October, 2018.

 */s/ Michael A. Heilman*
 Michael A. Heilman